IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LUZ DELEON, for other J.D., | ) ) ) | CASE NO. 1:12CV01149 |
| Plaintiff, | ) ) | JUDGE JAMES S. GWIN |
| v. | ) ) | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,[1] | ) ) ) | |
| Defendant. | ) ) ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Luz Deleon ("Plaintiff"), mother of J.D., a minor, ("Claimant"), seeks judicial

review of the final decision of the Defendant, Commissioner of Social Security

("Commissioner"), denying Claimant's application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. (The "Act").  Doc. 1.  This

Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the

undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule

72.2(b)(1).

For the reasons stated below, the undersigned recommends that the Commissioner's

decision be **AFFIRMED**.

## I.  Procedural History

On November 14, 2006, Claimant's mother protectively filed an application for SSI on

behalf of Claimant alleging disability based on impairments of vasculitis microscopic

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to FED. R. CIV. P. 25(D), she is hereby substituted for Michael J. Astrue as the Defendant in this case.

polyangitis,[2] iron deficiency and a fast heart, with an alleged disability onset date of May 1, 2005. Tr. 15, 65-66, 67, 96-107.  The claim was denied initially on May 8, 2007 (Tr. 67-69), and upon reconsideration on October 10, 2007 (Tr. 73-75).   After Plaintiff requested a hearing (Tr. 76), on November 24, 2009, a hearing was held before Administrative Law Judge Alfred V. Lucas (the "ALJ") (Tr. 30-64).  In his April 27, 2010, decision, the ALJ determined that Claimant was not disabled or entitled to SSI benefits.  Tr. 12-29.  Plaintiff requested review of the ALJ's decision by the Appeals Council and, on March 17, 2012, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.  On May 10, 2012, Plaintiff filed the instant action on behalf of Claimant seeking review of the Commissioner's decision.  Doc. 1.

## II. Evidence

### A.  Personal and Vocational Evidence

Claimant was born on February 5, 1999.  Tr. 33, 80.  Claimant was in fifth grade at the time of the hearing.  Tr. 34.  Claimant has not attended special education classes.  Tr. 34, 105. Claimant is approximately a normal height and weight for her age.  Tr. 33.  Claimant resides with her mother and two sisters.  Tr. 33-34.

### B.  Medical Evidence

#### 1.  Treatment Records

Claimant's medical records indicate that she had experienced abdominal pain and periumbilical pain since about 2 years of age.  Tr. 202.  Beginning in February 2005, Claimant had been seen by a gastrointestinal specialist for abdominal pain and periumbilical pain.  Tr. 202. Claimant suffered from chronic coughs, recurrent strep throat, large tonsils, and anemia.  Tr. 200-201.  She has required blood transfusions.  Tr. 213, 272.  In October 2006, Claimant was having

---

[2] "Microscopic polyangitis" is a type of small vessel vasculitis, usually in the kidneys but sometimes also in the lungs, skin and nervous system.  *See* Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at 1509. "Vasculitis" is inflammation of a blood or lymph vessel.  *Id.* at 2054.

problems with her ankles swelling and causing pain.  Tr. 215.

On October 31, 2006, Claimant presented to MetroHealth Medical Center with complaints of a racing heart.  Tr. 224-226.  She required intubation and was admitted to the pediatric ICU. Tr. 256.  Following an assessment of pulmonary hemorrhage with hemoptysis, anemia, and tachycardia, she was transferred to University Hospitals where she remained hospitalized until November 14, 2006.  Tr. 163, 164-165, 225-226.  Claimant was discharged in stable condition with a diagnosis of vasculitis microscopic polyangitis versis granulomatosis vasculitis, status post pulmonary hemorrhage, and status post chronic iron deficiency.  Tr. 163, 165.  She was allowed to perform activities as tolerated.  Tr. 163.  She was prescribed a number of different medications including prednisone and cytoxan and instructed to follow up with Dr. Elizabeth Brooks, a pediatric rheumatologist at Rainbow Babies.  Tr. 165.

Following her discharge, Claimant began treating with Dr. Brooks.[3]  On December 6, 2006, Dr. Brooks indicated that Claimant was doing well on her new medication but Claimant reported some intermittent abdominal pain, poor sleep, and a persistent cough.  Tr. 253.  Dr. Brooks instructed Claimant to start taking Miralax, she referred Claimant to a gastroenterologist for her abdominal pain, and she decreased Claimant's prednisone.  Tr. 253.  In March 2007, Claimant continued to report abdominal pain.  Tr. 2401-241.  Dr. Brooks instructed Claimant to re-start Miralex.  Tr. 241.

Claimant continued to treat with Dr. Brooks and, in early 2008, Dr. Brooks switched Claimant's cytoxan medication to methotrexate injections.  Tr. 435.  As of April 3, 2008, Claimant started her weekly methotrexate injections.[4]  Tr. 429.  At a June 5, 2008, appointment with Dr. Brooks, Claimant was doing well.  Tr. 425.  On September 2, 2008, Claimant was "doing

---

[3] Dr. Brooks referred Claimant to various specialists, including a pulmonary specialist (Tr. 414-415), nephrology department (Tr. 256-247), and dermatologist (Tr. 289-290).

[4] Initially, Claimant did not make the switch to the new medication.  Tr. 436.

3

well" and her "shots [were] going great." Tr. 419.  Dr. Brooks ordered repeat blood work and a

chest CT to check Claimant's progress but she also reported that Claimant was stable on her

medications.  Tr. 422.  Claimant's mother was instructed to call if Claimant's condition changed.

Tr. 422.  At a December 4, 2008, visit, Plaintiff expressed concern to Dr. Brooks regarding the

methotrexate injections.  Tr. 308-309.  Plaintiff reported that Claimant runs from her when she

tries to administer the injection.  Tr. 308.  Claimant indicated that she runs from her mom because

the injection is painful.  Tr. 309.  Dr. Brooks reminded Plaintiff that she should be applying the

prescribed cream to the injection site prior to the injection to minimize the pain.  Tr. 309.

However, Plaintiff reported that, because she has to wait up to an hour after applying the cream to

administer the injection, she was not using the cream because she was concerned that she would

forget to give the shot.  Tr. 309.  Plaintiff also reported that Claimant was not taking her other

medication independently.  Tr. 308.   Dr. Brooks discussed with Plaintiff that, because of

Claimant's age, Claimant cannot and should not be taking her medication independently.  Tr. 309.

Dr. Brooks offered some additional suggestions to ensure that the medication was being given as

prescribed.  Tr. 309.

On January 6, 2009, Dr. Brooks saw Claimant for complaints of a sore throat.  Tr. 342.

Plaintiff reported that Claimant was getting better about taking her folic acid each day and was

not fighting the methotrexate injections as much as she had been.  Tr. 342.  However, Claimant

had stopped taking her Albuterol and using her Veramyst nasal spray.  Tr. 342.  Dr. Brooks

instructed Claimant to start her Albuterol and Veramyst and again reminded Plaintiff of the

importance of supervising Claimant taking her medication.  Tr. 342-343.

After a March 31, 2009, appointment with Dr. Brooks (Tr. 379), Claimant did not see Dr.

Brooks again until September 8, 2009 (Tr. 332).  At that September 8, 2009, visit, Claimant

reported having had almost daily abdominal pain since July and complained of a cough.  Tr. 332.

She reported that the pain usually occurred at night. Tr. 332. Also, during the September 8, 2009, visit, Claimant reported leg pain but also reported some improvement with Motrin. Tr. 374. Dr. Brooks ordered blood work and a chest x-ray.[5] Tr. 332-333. Dr. Brooks also advised Claimant to follow up with the pulmonary specialist regarding her cough and instructed Plaintiff was instructed to call the office should there be any changes in Claimant's condition. Tr. 332-333.

In January 2008, following reports that Claimant had been acting out and not paying attention in school (Tr. 319-323), Claimant's pediatrician referred Claimant to Dr. Terry Stancin, PhD, for behavioral screening (Tr. 313-314). Dr. Stancin concluded that, although Claimant's teacher reported some concerns about her ability to pay attention and understand directions, Claimant's behavior was within normal limits for girls ages 6 to 11. Tr. 314. Dr. Stancin noted that additional information from another caregiver, such as a parent, would be required to determine whether further evaluation by a mental health professional was warranted. Tr. 314.

### 2. Medical Opinions

#### a. Treating physician Dr. Elizabeth Brooks

On October 11, 2009, Dr. Elizabeth Brooks completed a Questionnaire on Medical and Functional Equivalence. Tr. 531-534. In that Questionnaire, Dr. Brooks assessed how Claimant's impairments affect her development and performance of age appropriate activities and rated Claimant in the six domains, i.e., acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for self; and health and physical well-being.[6] Tr. 531-533. Dr. Brooks opined that Claimant had no evidence of limitations in any of the six domains. Tr. 531-533. Dr. Brooks did note that

---

[5] The September 8, 2009, chest x-ray showed improvement since the November 10, 2006, x-ray. Tr. 371.

[6] The rating choices were: no evidence of limitations; moderate limitations; marked limitation; or extreme limitations. Tr. 531-533.

Claimant experiences side effects from her medication, including risk of infection, abdominal pain, nausea, vomiting, and headaches.  Tr. 533.  She also indicated that Claimant's disease is a condition that will wax and wane and, ideally, once in remission, will stay in remission.  Tr. 533.

### b.    State agency consultative physician Dr. James T. Liang

On April 4, 2007, state agency consultative physician James T. Liang, M.D., examined Claimant.  Tr. 273-274.  Claimant was 8 years old at the time of the examination.  Tr. 271.  He concluded that Claimant was an alert and cooperative child with normal speech and normal gross motor and fine motor skills.  Tr. 273.  Dr. Liang opined that Claimant's behavior was appropriate for her age.  Tr. 273.  Dr. Liang indicated that Claimant had microscopic polyangitis and was taking various medications.  Tr. 273.  He noted that she experiences abdominal pain and vomiting once per week.  Tr. 273.

### c.    State agency reviewing physicians

#### Dr. Malika Haque

On May 7, 2007, state agency reviewing physician Malika Haque, M.D., completed a Childhood Disability Evaluation Form.  Tr. 274-279.  She concluded that Claimant had no limitations in five of the six domains, i.e., acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; and caring for self.  Tr. 274-277.  She concluded that Claimant had less than marked limitations in the health and physical well-being domain.  Tr. 277.

#### Dr. Jayne Dye

On September 27, 2007, state agency reviewing physician Jayne Dye, M.D., also completed a Childhood Disability Evaluation Form.  Tr. 292-297.  She concluded that Claimant had no limitations in three domains, i.e., acquiring and using information; attending and completing tasks; and moving about and manipulating objects.  Tr. 294-295.  She also concluded

that Claimant had less than marked limitations in the three other domains, i.e., interacting and relating to others; caring for yourself; and health and physical well-being.  Tr. 294-295.  Dr. Dye's opinion that Claimant had less than marked limitations in interacting with others was based on the fact that, when Claimant was taking steroids,  she gained weight and there had been reports that other children made fun of her.  Tr. 294.  Dr. Dye's opinion that Claimant had less than marked limitation in caring for herself was based on the fact that Claimant needed adult supervision to take her medications as directed.  Tr. 295.  Dr. Dye noted that Claimant's vasculitis is controlled by medication.  Tr. 298.

**C.  School Records**

Claimant was not in special education classes.  Tr. 34, 105, 134.  She received As, Bs, Cs and some Ds.  Tr. 147-149, 153.  On average, her marks for "taking responsibility for behavior" and taking "responsibility for learning" were good or improved over reporting periods.  Tr. 147-150.  In second grade, Claimant's English as a Second Language teacher indicated that Claimant could read and write with fluency in English.  Tr. 132-133.   In third grade, Claimant scored a "beginning" composite score on the Ohio Test of English Language Acquisition.  Tr. 152.  In fourth grade, Claimant's score improved and she achieved an "advanced" composite score on the Ohio Test of English Language Acquisition.  Tr. 151.

**D.  Testimonial Evidence**

**1.  Plaintiff's Testimony**

Plaintiff testified at the administrative hearing regarding her daughter's medical condition and her ability to function.  Tr. 32-55, 56-58.  She reported that Claimant sees Dr. Brooks her once or twice each month as needed.  Tr. 35.  Claimant takes Methotrexate injections once a week

which her mother administers in Claimant's stomach.[7]  Tr. 35.  Claimant refuses to take most of

her medications.  Tr. 54.  Plaintiff has to chase Claimant around the house to give her the

Methotrexate injection.  Tr. 54. Following the injections, Claimant experiences an increase in the

amount of abdominal pain over the pain she already experiences on a regular basis.  Tr. 35-37, 39.

In response to the medical expert's questions regarding Claimant's constant abdominal pain,

Plaintiff indicated that Claimant no longer takes Miralax because Plaintiff's bowel movements are

regular and normal.  Tr. 56.  Claimant has complained about pain in her left wrist and pain in her

legs which causes her to feel kind of weak.  Tr. 37-38.  At one time, Claimant had to use crutches

but no longer needs crutches.  Tr. 40.  She participates in gym class at school and has not needed

to be excused from gym class due to her medical condition.  Tr. 41.  Claimant always has a sore

throat and infections in her throat.  Tr. 38.  She also has a chronic cough.  Tr. 54.  She has taken

Albuterol in the past to help with her congestion but no longer takes that medication.  Tr. 54.

    Ever since Claimant was in kindergarten, her teachers have complained to Plaintiff about

Claimant's behavior.  Tr. 42, 57-58.  Claimant has difficulties remembering and relaying stories.[8]

Tr. 42.  Claimant is always distracted and she does not concentrate on what is in front of her.  Tr.

43.  Plaintiff has a difficult time getting Claimant to complete her homework.  Tr. 44.  Claimant is

slow in following Plaintiff's directions and Claimant's teachers have also complained about

Claimant's ability to follow directions.  Tr. 44.  For example, Plaintiff stated that she has to tell

Claimant more than once to do things like getting dressed in the morning.  Tr. 44.  Claimant also

refuses to do things that Plaintiff asks her to do and her teachers have indicated to Plaintiff that

Claimant does not always complete her homework.[9]  Tr. 45-46.  Claimant talks back to Plaintiff

---

[7] She also takes Folic Acid every day (Tr. 35) and over-the-counter pain medication as needed for her pain (Tr. 55).
[8] As compared to her sisters, Claimant does not have trouble remembering things.  Tr. 42.

[9] Plaintiff stated that she does not understand why the teachers are stating that Claimant is not completing her homework because Plaintiff sits with Claimant to complete her homework.  Tr. 46.

and gets angry when she does not get what she wants.  Tr. 46.  Although Claimant and her sisters sometimes push each other around, Claimant's teachers have not reported any physical altercations at school.  Tr. 47.

Claimant does not have any friends (Tr. 48, 53) but she recently started to participate in a program at school where kids do different activities together (Tr. 49).  Claimant gets in invited to birthday parties but Plaintiff does not allow Claimant to attend because she does not feel it is safe. Tr. 53.  Also, Plaintiff does not allow Claimant to visit at other kids' houses because she does not trust Claimant being there; Plaintiff does not feel that Claimant is ready to defend herself if something were to happen when she is at someone else's home.  Tr. 51-52.  One time, Claimant had a girl from school over to her house.  Tr. 53.  However, that girl started causing problems in school so Plaintiff did not continue to allow Claimant to have friends over.  Tr. 53.  When Claimant first started to take her steroid medication, she gained weight and kids at school made fun of her.  Tr. 52.  Plaintiff spoke with the school staff and they in turn spoke with Claimant's classmates.  Tr. 52-53.  Claimant's classmates then stopped making fun of her.  Tr. 52-53.  Also, once Claimant's medications were reduced, she started losing weight and did not continue to have problems.  Tr. 53.

Claimant enjoys and occasionally attends church.  Tr. 49-50.  When visiting with her grandmothers, Claimant sometimes is difficult for them to deal with.  Tr. 50.  She likes to watch television and play games but, because she does not take good care of her toys, she does not have many toys to play with.  Tr. 50-51.  She rides her bike and swims.  Tr. 51.

    **2.**       **Medical Expert Dr. Selig Strassman**

        **a.**       **Dr. Strassman's Hearing Testimony**

Dr. Selig Strassman, M.D., board certified in pediatrics testified as a medical expert at the hearing.  Tr. 56-64.  Because Dr. Strassman had not received most of the records until the

morning of the hearing, his testimony was brief and the ALJ advised everyone at the hearing that interrogatories would be submitted to Dr. Strassman following the hearing. Tr. 32, 56. Dr. Strassman indicated that he is not an expert in Claimant's disease and had not reviewed all of the medical records. Tr. 61. However, based on his initial review of the records, he opined that Claimant did not meet a Listing and had less than marked limitations in one domain: health and well-being. Tr. 58-59.

### b.    Dr. Strassman's Interrogatory Responses

On March 17, 2010, following his review of all the records, Dr. Strassman completed Interrogatories. Tr. 535. Dr. Strassman indicated that the records showed that Dr. Brooks was treating Claimant. Tr. 535. Claimant was taking Metotrexate for her condition and was doing well and remaining stable. Tr. 535. He also noted that the records showed that Claimant had done "quite well" in school. Tr. 535.

Dr. Strassman opined that Claimant's impairment(s) did not meet or equal a Listing. Tr. 535. He also opined that Claimant's impairment(s) did not functionally equal a Listing. Tr. 535. He found that Claimant had no limitations in five of the six domains and marked limitations in one domain: health and physical well-being. Tr. 535. He explained that his assessment of a marked limitation in health and physical well-being was based on the nature of Claimant's diagnosed disease and treatment and because, although it had not occurred, there was the possibility for reversal of remission. Tr. 535. Additionally, he commented that there were many notations regarding mother's non-compliance with Claimant's prescriptions. Tr. 535.

On March 23, 2010, the ALJ forwarded Dr. Strassman's responses to Plaintiff's counsel. Tr. 161-162. The ALJ gave counsel until April 5, 2010, to submit any comments or provide additional records. Tr. 161-162. Plaintiff did not submit any comments or additional records.

10

### III. Standard for Disability

The standard for evaluating a child's disability claim differs from that used for an adult.

42 U.S.C. § 1382c(a)(3)(C); *see also Miller ex rel. Devine v. Comm'r of Soc. Sec.*, 37 F. App'x

146, 147 (6th Cir. 2002).  A child is considered disabled if he has a "medically determinable

physical or mental impairment that results in marked and severe functional limitations and can be

expected to result in death or has lasted or can be expected to last for a continuous period of not

less than 12 months."  42 U.S.C. § 1382c(a)(3)(C).  To determine whether a child is disabled, the

regulations prescribe a three-step sequential evaluation process.  20 C.F.R. § 416.924(a).  At Step

One, a child must not be engaged in "substantial gainful activity."  20 C.F.R. § 416.924(b).  At

Step Two, a child must suffer from a "severe impairment."  20 C.F.R. § 416.924(c).  At Step

Three, disability will be found if a child has an impairment, or combination of impairments, that

meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P,

App'x 1; 20 C.F.R. § 416.924(d).[10]

To determine whether a child's impairment functionally equals the Listings, the

Commissioner will assess the functional limitations caused by the impairment.  20 C.F.R. §

416.926a(a).  The Commissioner will consider how a child functions in six domains: (1) acquiring

and using information; (2) attending and completing tasks; (3) interacting and relating with

others; (4) moving about and manipulating objects; (5) caring for [oneself]; and (6) health and

physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).  If a child's impairment results in

"marked" limitations[11] in two domains, or an "extreme" limitation[12] in one domain, the

---

[10] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.

[11] A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2)(i).  A "marked" limitation is "more than moderate" but "less than

impairments functionally equal the listings and the child will be found disabled.  20 C.F.R. §
416.926a(d).

## IV. The ALJ's Decision

In his April 27, 2010, decision, the ALJ made the following findings:

1. Claimant was born on February 5, 1999.  Therefore, she was a
school-age child on the date of her application for SSI and
currently a school-age child.  Tr. 18.

2. Claimant had not engaged in substantial gainful activity since
November 14, 2006, the application date.  Tr. 18.

3. Claimant has the following severe impairment: microscopic
polyangitis.  Tr. 18.

4. Claimant does not have an impairment or combination of
impairments that meets or medically equals a Listing.  Tr. 18.

5. Claimant does not have an impairment or combination of
impairments that functionally equals a Listing.  Tr. 18-25.

Based on the foregoing, the ALJ determined that Claimant had not been under a disability
since November 14, 2006, the application filing date.  Tr.  25.

## V.  Parties' Arguments

### A.    Plaintiff's Arguments

First, Plaintiff argues that the ALJ erred in concluding that Claimant's microscopic
polyangitis did not medically or functionally equal a Listing because Claimant has marked
limitations in two domains: *attending and completing tasks* and in *caring for yourself*.  Doc. 13-1,
pp. 9-13.  Plaintiff asserts that the evidence supports a finding that Claimant has marked

---

extreme."  *Id.*  "It is the equivalent of the functioning we would expect to find on standardized testing with scores that
are at least two, but less than three, standard deviations below the mean."  *Id.*

[12] An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate,
sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).  An "extreme" limitation means "more than marked."
*Id.*  "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at
least three standard deviations below the mean."  *Id.*

impairments in *attending and completing tasks* because Plaintiff has observed Claimant having problems with attention, completing homework and chores, and finishing what she starts; and Claimant's report cards reflect poor class work and a failure to complete work and homework. Doc. 13-1, p. 11.  Additionally, Plaintiff asserts that the ALJ failed to consider the effect of Claimant's persistent abdominal pain and vomiting on her ability to pay attention and complete tasks.  Doc. 13-1, pp. 11-12.   Plaintiff also asserts that the evidence supports a finding that Claimant has marked impairments in the *caring for yourself* domain.  Plaintiff asserts that, because Plaintiff fights taking her medication and cannot take her medications independently, she has marked limitations in the *caring for yourself* domain.  Doc. 13-1, pp. 12-13.  Additionally, Plaintiff asserts that, although the ALJ gave "significant weight" to state agency reviewing psychologist Dr. Dye's opinion, the ALJ failed to offer an explanation as to why he rejected the part of her opinion that concluded that Claimant had at least "less than marked" limitations in the domain of *caring for yourself*.   Doc. 13-1, pp. 12-13.

Second, Plaintiff argues that the ALJ erred by relying on Dr. Strassman's testimony and interrogatory responses.  Doc. 13-1, pp. 14-15.  In support of this argument, Plaintiff asserts that Dr. Strassman is not an expert in Claimant's disease and Plaintiff did not have an opportunity to cross-examine Dr. Strassman following his submission of medical interrogatories after the March 17, 2010, administrative hearing.[13]  Doc. 13-1, pp. 14-15.

**B.    Defendant's Arguments**

In response to Plaintiff's first argument, the Commissioner argues that the ALJ reasonably concluded that Claimant's impairments did not meet or functionally equal a Listing.  Doc. 15, pp. 8-14.  The Commissioner asserts that Claimant had no limitations in *attending and completing*

---

[13] Plaintiff also notes that, at the hearing, Dr. Strassman indicated that he had not received most of the medical evidence until the morning of the hearing.  Doc. 13-1, p. 14.

*tasks* and Plaintiff's reliance upon her own reports concerning Claimant's condition and assertion that Claimant had low grades and persistent abdominal pain and vomiting are unconvincing.  Doc. 15, pp. 8-10.  The Commissioner also asserts that Claimant had no limitations in *caring for yourself* and that Plaintiff's argument that Claimant had marked limitations in *caring for yourself* because she was unable to take her medications independently is also unconvincing.  Doc. 15, pp. 11-14.  Further, the Commissioner asserts that Plaintiff's criticism of the ALJ's treatment of state agency reviewing psychologist Dr. Dye's opinion is without merit.  Doc. 15, pp. 13-14.

In response to Plaintiff's second argument, the Commissioner argues that the ALJ reasonably relied upon Dr. Strassman's opinion that Claimant's impairments did not meet or functionally equal a Listing.  Doc. 15, pp. 14-15.  The Commissioner asserts that Dr. Strassman is board certified in pediatrics, his opinion was based upon the totality of the evidence and his opinion is consistent with other opinions of record.  Doc. 15, pp. 14-16.  Further, the Commissioner asserts that, after receiving Dr. Strassman's responses to the interrogatories, the ALJ, through his communication with Plaintiff's counsel, provided Plaintiff with an opportunity to submit comments concerning the evidence and to submit additional records.  Doc. 15, p. 15. However, Plaintiff did not avail herself of the opportunity to do so.  Doc. 15, p. 15.  Thus, the Commissioner argues, Plaintiff waived her opportunity to cross-examine Dr. Strassman and her argument concerning the ALJ's reliance upon Dr. Strassman's opinion is without merit.  Doc. 15, p. 15.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less

than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.  The ALJ reasonably concluded that Claimant's impairments did not meet or functionally equal a Listing.**

**1.  The ALJ's finding that Claimant has no limitations in *attending and completing tasks* is supported by substantial evidence.**

Plaintiff asserts that the evidence supports a finding that Claimant has marked impairments in *attending and completing tasks* because Plaintiff has observed Claimant having problems with attention, completing homework and chores, and finishing what she starts; and Claimant's report cards reflect poor class work and a failure to complete work and homework. Doc. 13-1, p. 11.  Additionally, Plaintiff asserts that the ALJ failed to consider the effect of Claimant's persistent abdominal pain and vomiting on her ability to pay attention and complete tasks.  Doc. 13-1, pp. 11-12.

When evaluating the *attending and completing tasks* domain, an ALJ considers how well the child is able to focus and maintain her attention, how well she can begin, carry through, and finish her activities, including the pace at which she performs them and the ease with which she can change them.  20 C.F.R. § 416.926a(h).  The regulations further provide that a school-age-child (age 6 to attainment of age 12) should be able to: focus her attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments; concentrate on details and not make careless mistakes in work (beyond what would be expected in other children your age who do not have impairments); change her activities or routines without distracting herself or others, and stay on task and in place when appropriate; sustain attention well enough to participate in group sports,

read by herself, and complete family chores; and complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.  20 C.F.R. 416.926a(h)(2)(iv).

Although Plaintiff asserts that Claimant has problems listening or paying attention, the ALJ considered and reasonably concluded that Claimant's school records do not support a finding of marked or extreme limitations in the domain of *attending and completing tasks*.  Tr. 22.  He concluded that Claimant has no limitations in *attending and completing tasks*.  Tr. 22.  As noted by the ALJ, Claimant's fourth grade records reflect that Claimant generally was getting B's and C's with some A's.  Tr. 147.  Although Claimant did get a few D's, as the school year progressed, her grades generally improved.  Tr. 147.  In fourth grade, Claimant received either good or satisfactory marks for taking "responsibility for learning" and taking "responsibility for behavior." Tr. 22, 147.  Also, in a Function Report – Child Age 6 – 12th Birthday, although Plaintiff reported that Claimant's ability to pay attention and stick with a task was limited, she also indicated that Claimant: keeps busy on her own, works on arts and crafts projects, completes homework, and completes chores most of the time.  Tr. 22, 94.  Plaintiff noted only that Claimant does not finish what she starts.  Tr. 94.

Although the ALJ did not specifically refer to Plaintiff's complaints of pain and vomiting under the heading of *attending and completing tasks*, the ALJ's decision makes clear that he considered Claimant's complaints of pain and the impact of her medical condition on the domains.  For example, in evaluating the *attending and completing tasks* domain, he noted that, in fourth grade, Claimant was absent only 9 days and tardy only 3 days.  Tr. 22, 147.  Such a finding is reflective of the fact that Claimant's medical condition did not greatly impact her ability to attend classes.  The ALJ considered Plaintiff's reports that Claimant's pain kept her up at night (Tr. 19) and that Dr. Liang's consultative evaluation noted Claimant's reports of pain (Tr. 20).

He reviewed and considered her medical records, including Dr. Brooks's records which showed that, although Claimant had been having stomach pain since July 2009, she had missed follow-up appointments and was not seen by Dr. Brooks until September 8, 2009. Tr. 20, 376.

Additionally, the ALJ considered opinion evidence from Dr. Haque, Dr. Dye and Dr. Strassman. Tr. 20-21. Each of the physicians opined that Claimant had no limitations in *attending and completing tasks*. Tr. 20-21, 276 (Dr. Haque); 294 (Dr. Dye); and 535 (Dr. Strassman). Also, on October 11, 2009, Claimant's own treating physician Dr. Brooks opined that Claimant had no evidence of limitations in the *attending and completing tasks* domain. Tr. 532.

As shown above, the ALJ's decision demonstrates that the ALJ sufficiently considered the record and explained his decision. Further, as shown, his decision is supported by substantial evidence. Accordingly, Plaintiff's argument that the ALJ erred in concluding that Claimant has no limitations in the *attending and completing tasks* domain is without merit and not a basis for reversal.

    **2. The ALJ's finding that Claimant has no limitations in *caring for yourself* is supported by substantial evidence.**

Plaintiff asserts that the evidence supports a finding that Claimant has marked impairments in the *caring for yourself* domain. She argues that, because Plaintiff fights taking her medication and cannot take her medications independently, the ALJ should have found marked limitations in the domain of *caring for yourself*. Doc. 13-1, pp. 12-13. Additionally, Plaintiff asserts that, although the ALJ gave "significant weight" to state agency reviewing psychologist Dr. Dye's opinion, the ALJ failed to offer an explanation as to why he rejected the part of her opinion that concluded that Claimant had *at least* "less than marked" limitations in the domain of

*caring for yourself.*[14]  Doc. 13-1, pp. 12-13.

When evaluating the *caring for yourself* domain, an ALJ considers how well a child is able to maintain a healthy emotional and physical state, including how well she gets her physical and emotional wants and needs met in appropriate ways; how she can cope with stress and changes in her environment; and whether she takes care of her own health, possessions and living area.  20 C.F.R. § 416.926a(k).  The regulations further provide that a school-age-child (age 6 to attainment of age 12) should be able to: be independent in most day-to-day activities, e.g., dressing self, bathing self, but with the possible need for some reminders to perform these activities routinely; begin to recognize that she is competent in doing some activities and that she has difficulties doing others; be able to identify circumstances when she feels good about herself and when she feels bad; begin to develop an understanding of what it right and wrong and what is acceptable and unacceptable behavior; begin to demonstrate consistent control over her behavior; avoid behaviors that are unsafe or not good for her; and begin to imitate more of the behavior of adults that she knows.  20 C.F.R. 416.926a(k)(2)(iv).

The ALJ reasonably concluded that Claimant has no limitations in the *caring for yourself* domain.  Tr. 24.  He considered a function report that reflects that Claimant can use zippers, button clothes, tie shoelaces, brush teeth, and eat by herself using a knife, fork and spoon.  Tr. 24, 93.  Plaintiff argues that the ALJ only focused on those things that Claimant could do and did not consider other things that Claimant reportedly could not do that were in the same report.  Doc. 13-1, p. 13.  However, the ALJ noted that the function report also indicated that Claimant could not do some things independently such, as brush or wash her hair or pick out her own clothes, but he considered the fact that, when the report was completed on January 12, 2006, Plaintiff was only 6

---

[14] Dr. Dye opined that Claimant had less than marked limitations in the *caring for yourself* domain.  Tr. 295.  Plaintiff rephrases this opinion as *at least* less than marked limitations.  Doc. 13-1, pp. 12-13.

years old.  Tr. 24, 93.

Other than taking issue with the ALJ's consideration of the January 12, 2006, function report, Plaintiff argues that the record shows that Claimant cannot independently take her own medication and therefore the ALJ should have concluded that she has marked limitations in the domain of *caring for yourself*.  Doc. 13-1, pp. 12-13.  Plaintiff's argument is unpersuasive.  What the records show is that, as of December 2008, when Claimant was 9 years old, Claimant's own treating physician was of the opinion that, based on Claimant's age, she could not be expected to take her medication without supervision.  Tr. 308-309, 398.  However, as noted by the ALJ, physician visit notes reflect that Plaintiff was not monitoring Claimant's medication and had forgotten to give Claimant her injections.  Tr. 20 (citing Tr. 398, 411).  Further, although Claimant fought getting her shot, she did so because it was painful.  Tr. 308-309.  To alleviate the pain, Dr. Brooks prescribed a cream to be applied prior to administration of the shot.  Tr. 308-309.  However, Plaintiff admittedly did not always apply the topical cream before administering the shot because she stated that she was afraid that she would then forget to give Claimant the shot.  Tr. 309.

Plaintiff also argues that, even though the ALJ gave "significant weight" to Dr. Dye's opinion, he fails to explain why he rejected the portion of her opinion that concludes that Claimant has less than marked limitations in *caring for yourself* and includes a notation that careful adult supervision is needed for administration of Claimant's medications.  Doc. 13-1, pp. 12-13 (citing Tr. 292-295).  Although the ALJ gave significant weight to Dr. Dye's opinion, he did so only to the extent consistent with his findings which included a finding of no limitations in *caring for yourself*.  Tr. 21, 24.  Further, even if Dr. Dye's opinion were accepted verbatim, she did not opine that Claimant had marked limitations.  Thus, the requirements for functional equivalence would still not be met.  *See* 20 C.F.R. § 416.926a(d) (If a child's impairment results

in "marked" limitations in two domains, or an "extreme" limitation  in one domain, the impairments functionally equal the listings and the child will be found disabled).   Moreover, each of the other physicians, including Claimant's own treating physician Dr. Brooks, opined that Claimant had no limitations in *caring for yourself*.  Tr. 20-21, 277 (Dr. Haque); and 535 (Dr. Strassman); Tr. 532 (Dr. Brooks).

A review of the ALJ's decision and the record demonstrates that the ALJ sufficiently considered the record and explained his decision.  Further, as shown, his decision is supported by substantial evidence.  Accordingly, Plaintiff's argument that the ALJ erred in concluding that Claimant has no limitations in the *caring for yourself* domain is without merit and not a basis for reversal.

**B.  The ALJ's consideration and reliance upon Dr. Selig Strassman's opinion was proper.**

Plaintiff argues that the ALJ erred by relying on Dr. Strassman's testimony and interrogatory responses.  Doc. 13-1, pp. 14-15.  In support of this argument, Plaintiff asserts that Plaintiff did not have an opportunity to cross-examine Dr. Strassman following his submission of medical interrogatories after the March 17, 2010, administrative hearing and Dr. Strassman is not an expert in Claimant's disease.  Doc. 13-1, pp. 14-15.

To support her argument that the case should be reversed because she did not have an opportunity to cross-examine Dr. Strassman or rebut his report Plaintiff relies upon *Johnson v. Bowen*, 699 F.Supp. 475 (E.D. Pa. 1988) and *Townley v. Heckler*, 748 F.2d 109 (2nd Cir. 1984). Doc. 13-1, pp. 14-15.   However, those cases are distinguishable from Plaintiff's case.  In *Townley*, the ALJ did not inform plaintiff's counsel of the need for vocational expert testimony until after the vocational expert's report had already been filed with the ALJ.  748 F.2d at 114.  Further, following plaintiff's counsel's receipt of notice that a vocational expert had submitted

testimony after the hearing, plaintiff's counsel submitted suggestions to the ALJ for submission to the vocational expert and requested the ability to cross-examine the expert.  *Id.*  However, there was no evidence that the ALJ ever forwarded the suggestions or requests for clarification to the vocational expert.  *Id.*  Additionally, the ALJ did not grant the plaintiff's request to cross-examine the expert at a hearing because the ALJ said that the expert would not be available for several months.  *Id.* at 112, 114.  Instead, the ALJ informed the plaintiff that he would decide plaintiff's case on the record.  *Id.*  In *Johnson*, 56 days following the hearing, a psychological evaluation was performed on the plaintiff and the physician performing the evaluation submitted a report to the ALJ.  699 F.Supp. at 479.  Although the ALJ relied upon the physician's report, the ALJ did not provide plaintiff's counsel with a copy of the report prior to rendering his decision; plaintiff's counsel did not receive a copy of the report until counsel demanded a copy of the report from the Appeals Council.  *Id.*

In contrast, here, prior to the start of the hearing, the ALJ notified Plaintiff that Dr. Strassman had only just received most of the medical records and therefore the balance of the records and interrogatories would be submitted to Dr. Strassman following the hearing.  Tr. 32. Plaintiff made no objection to proceeding in this manner.  Further, after receiving Dr. Strassman's responses to the interrogatories, the ALJ, through his communication with Plaintiff's counsel, provided Plaintiff an opportunity to submit comments concerning the evidence and to submit additional records.  Tr. 161-162.  However, Plaintiff did not avail herself of the opportunity to do so.  Nor did Plaintiff ask the ALJ for an opportunity to cross-examine Dr. Strassman.  Unlike the plaintiffs in the cases cited by Plaintiff, Plaintiff received adequate notice and, following submission of Dr. Strassman's interrogatories and prior to the ALJ's issuance of his decision, was provided a meaningful opportunity to challenge Dr. Strassman's opinions.  Since Plaintiff waived her opportunity to cross-examine, her attempt now to rely on a claimed inability to cross-examine

21

Dr. Strassman to support her claim for reversal is unpersuasive and without merit.  *See, Chandler v. Comm'r of Soc. Sec.*, 124 Fed. Appx. 355, 359 (6th Cir. 2005) (finding no lack of due process where ALJ provided claimant an opportunity to submit his own interrogatories but claimant never did); *Chamberlain v. Shalala*, 47 F.3d 1489, 1496 (8th Cir. 1995) ("If the claimant's attorney fails to object to the post-hearing reports of remains silent when the opportunity to request cross-examination arises, the right to cross-examination is waived.") (internal citations omitted).

Plaintiff also argues that the ALJ's reliance on Dr. Strassman as a medical expert was error because Dr. Strassman is not an expert as to Plaintiff's medical condition.  However, as discussed below, the ALJ did not err in considering or relying upon Dr. Strassman's opinion.

The regulations contemplate that not all medical opinions will be rendered by specialists. 20 C.F.R. § 416.927(c)(5).  While a physician's specialization is a factor to consider when evaluating medical opinions, it is only one of a number of factors and is not dispositive of the weight to be assigned to a medical opinion.  20 C.F.R. § 416.927(c).  As indicated, Claimant's specific medical condition is not all that common.  Tr. 61.  Thus, obtaining a specialist in Claimant's specific medical condition may not have been feasible.  Further, although not a specialist in Claimant's specific medical condition, Dr. Strassman is board certified in pediatrics. Tr. 56, 329.  Additionally, Dr. Strassman's opinion as to each of the domains was ultimately based on a review of the complete record.  Tr. 20, 535.   Finally, as discussed above, Claimant's own treating physician Dr. Brooks (Tr. 531-534) and other physicians who reviewed the record concluded, like Dr. Strassman, that Claimant's impairment does not functionally equal a Listing (Tr. 292-297 (Dr. Dye); Tr. 274-279 (Dr. Haque)).

Thus, based on the foregoing, the ALJ did not err in considering or relying upon Dr. Strassman's opinion.

22

## VII. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision denying Claimant's Application for Supplemental Security Income be **AFFIRMED**.

Dated: May 8, 2013

Kathleen B. Burke
United States Magistrate Judge

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).